3ORIGINAL

Law Offices of Beles & Beles
Robert J. Beles Bar no. 41993
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel No. (510) 836-0100
Fax. No. (510) 832-3690

Attorney for *Petitioner*
ABDEL ALIEM EL BADRY

United States District Court
Eastern District of California
--- Courthouse

| | |
|---|---|
| ABDEL ALIEM EL BADRY,<br><br>*Petitioner*,<br>vs.<br><br>GENA JONES, Warden, California Health Care Facility, Stockton, California,<br><br>*Respondent*.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>*Real Party in Interest*. | No. 2:22-at-430<br><br>PETITION FOR WRIT OF HABEAS CORPUS; VERIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS "A" AND "B" |

**PETITION FOR WRIT OF HABEAS CORPUS**

**VERIFICATION**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**EXHIBITS "A" AND "B"**

# TABLE OF CONTENTS

*item* *page no.*

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PETITION FOR WRIT OF HABEAS CORPUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

    1. Statement of custody and jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

    2. Statement of facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-2

        a. Prosecution's case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-2

            i. The charged incident.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-2

            ii. Propensity evidence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-4

                (1) Kristen Hendricks.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-4

                (2) Alicia Allred.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-5

        b. Petitioner's case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-6

    3. Claims for relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

    4. Prayer for relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

VERIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

    1. Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

    2. As there were no permissible non-propensity inferences that the jury could have drawn from the prior bad acts, introduction of such evidence violated petitioner's Fourteenth Amendment due process rights.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

        a. Introduction and general law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

        b. There were no permissible non-propensity inferences that the jury could have drawn from the prior bad acts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . m-3

        c. Introduction of the prior bad acts evidence was prejudicial and deprived petitioner of a fundamentally fair trial in violation of due process. . . . . . . m-5

    3. Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-6

EXHIBITS "A" AND "B". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . following

# TABLE OF AUTHORITIES

*cases*                                                                                           *page no.*

*Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

*Barefoot v. Estelle*, 463 U.S. 880 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

*Boyde v. Brown*, 404 F.3d 1159 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

*Estelle v. McGuire*, 502 U.S. 62 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2, m-3

*Garceau v. Woodford*, 275 F.3d 769 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . m-2, m-5

*Greene v. Fisher*, 565 U.S. 34 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

*Griffith v. Kentucky*, 479 U.S. 314 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

*Jammal v. Van de Kamp*, 926 F.2d 918 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . m-1

*Jeffries v. Blodgett*, 5 F.3d 1180 (9th Cir. 1993)lodgett . . . . . . . . . . . . . . . . . . . . . . . . m-2

*Kipp v. Davis*, 971 F.3d 939 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . m-2, m-3, m-5

*McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . m-1-5

*United States v. Luna*, 21 F.3d 874 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . m-4

*United States v. Perkins*, 937 F.2d 1397 (9th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . m-4

*Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

| *statutes* | *page no.* |
|---|---|
| 28 U.S.C. section 2241(c)(3). | m-1 |
| 28 U.S.C. section 2241(d). | m-1 |
| 28 U.S.C. section 2244(d)(1)(A). | p-2 |
| 28 U.S.C. section 2254(a). | m-1 |
| Evidence Code section 1108. | m-3 |
| Penal Code section 236. | p-1, m-3 |
| Penal Code section 289(a)(1). | p-1, m-3 |
| Supreme Court Rule 13.1 | p-1 |
| Supreme Court Rule 13.3. | p-1, p-2 |
| United States Constitution, Fourteenth Amendment. | p-7, m-1, m-5 |

3ORIGINAL

United States District Court
Eastern District of California
--- Courthouse

| | |
|---|---|
| ABDEL ALIEM EL BADRY,<br><br>    *Petitioner*,<br>vs.<br><br>GENA JONES, Warden, California Health Care Facility, Stockton, California,<br><br>    *Respondent*.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    *Real Party in Interest*. | No. 2:22-at-430<br><br>PETITION FOR WRIT OF HABEAS CORPUS |

**PETITION FOR WRIT OF HABEAS CORPUS**

Comes now petitioner, Abdel Aliem El Badry, CDC no. BK7541, by and through counsel undersigned, and petitions for a writ of habeas corpus.

**1. Statement of custody and jurisdiction.**

1. On October 25, 2019, in the Sacramento County Superior Court, petitioner was convicted of Penal Code section 289(a)(1), penetration by a foreign object (count 1), and Penal Code section 236, false imprisonment (count 2), and was sentenced to 8 years in prison. (1CT 23-24; 3CT 675-676.)

2. Petitioner pursued a timely direct appeal. The California Supreme Court denied review on December 10, 2020.

3. Petitioner's direct review would normally have become final on March 10, 2021, the date of expiration of the 90 day time limit for filing a certiorari petition. Supreme Court Rules 13.1 and 13.3, *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) (process of direct review of a federal question includes the right to petition the Supreme Court for a writ of certiorari, and when this comes to an end, the underlying conviction becomes final), *Greene v. Fisher*, 565 U.S. 34, 39 (2011), citing *Griffith v. Kentucky*, 479 U.S. 314, 321, n.6 (1987) ("Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from this Court has

become time barred or has been disposed of.") However, on March 19, 2020, the U.S. Supreme Court extended the filing date for all certiorari petitions from 90 to 150 days under Rules 13.1 and 13.3 due to "ongoing public health concerns relating to COVID-19." On July 19, 2021, the U.S. Supreme Court rescinded its March 19, 2020 order, but also ordered that "in any case in which the relevant lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing was issued prior to July 19, 2021, the deadline to file a petition for a writ of certiorari remains extended to 150 days from the date of that judgment or order." (Orders attached as Exhibits A and B). Since the California Supreme Court's denial of the petition for review occurred during the "COVID period" between March 19, 2020, and July 19, 2021, the Supreme Court's 150 day extended time for filing a certiorari petition applied and petitioner's direct appeal became final on May 9, 2021, 150 days after the California Supreme Court denied review.

   4. This petition is being filed within a year after petitioner's direct appeal became final and is thereby timely under 28 U.S.C. section 2244(d)(1)(A).

   5. Petitioner is 70 years old and is currently serving his sentence at the California Health Care Facility, Stockton, California, in the physical custody of respondent, Gena Jones, Warden. He has a parole eligibility date of May 2024.

### 2. Statement of facts.

### a. Prosecution's case.

### i. The charged incident.

   6. Maria Doe testified that on May 23, 2014, she was near a flea market/yard sale picking up trash. She sometimes sold tamales that she would make. (1RT 230-232; 2RT 269-273, 323. Petitioner approached and offered her work. He said, "clean the house?" Doe responded, "Yes." Doe asked whether petitioner was married. When he said yes, Doe decided to go. She drove her own car and followed him in his white pickup truck with a disabled license plate to his house. (1RT232-238; 2RT 273-278.)

   7. At petitioner's house, petitioner said he was married. Doe and petitioner entered the

property through a gate, which petitioner locked. After they walked through the front door, petitioner locked it. Petitioner showed her a bedroom. They then went into the backyard. (1RT 238-240; 2RT 278-288.)

8. Petitioner and Doe entered a another bedroom. Petitioner pushed Doe onto the bed onto her back. She could not push him off. Petitioner opened a box and took out two dildos, one of which was "pinkish." There were other sex toys in the box, Doe struggled. (1RT 240-247; 2RT 288-297, 307-309, 311-314.)

9. Petitioner pulled off Doe's pants and underwear and, with the pinkish dildo, "penetrate[d] [her] a little on the front," i.e., her vaginal area. Petitioner put his penis in her mouth. Doe was nervous and shaking. (1RT 247-250; 297-300, 309-310.)

10. When Doe's phone rang, petitioner allowed her to get up. She said she had to deliver some tamales and that she would come back later to clean his house. Doe got dressed. Petitioner unlocked the front door. Doe "left fast." She left her phone at petitioner's house. (1RT 248; 2RT 251, 297, 310.)

11. Doe went to a hair salon, but was embarrassed to tell anyone what had happened. Doe went home and told her daughter, Maria, what had occurred. She told Maria where petitioner's house was located. Doe did not then report the incident to the police. (2RT 253-257; 2RT 297-298, 710-711.)

12. In late June 2015, Doe spoke to a security lady and told her what petitioner had allegedly done. The security lady called the police on June 26, 2015. With Martha, Doe's other daughter, acting as interpreter, Doe spoke to the police and took them to petitioner's house. Petitioner's white pickup truck was there. (2RT 256-259, 302, 305-307, 316.)

13. Officer Hendley spoke with Doe. Doe described the incident, the location, the vehicle, and the perpetrator. Doe directed the officer to the house -- 424 Berthoud Street. A white pickup truck with disabled license plate no. DP225BF was there. (2RT 315-321.) Doe told the officer the incident occurred on May 23, 2014. (2RT 323-333.)

14. The police showed Doe a photographic six-pack. She did not identify petitioner.

(2RT 259-261, 302-305, 321-323, 329-332, 405.)

15. Detective Rafiq learned that petitioner was a suspect and that petitioner had a Toyota pickup truck with license plate no. DP225BF. Petitioner's address was 424 Berthoud Street. (2RT 375-379, 405, 407-409.)

16. Detective Rafiq spoke to Doe. She described the location. She said that the suspect removed her pants and underwear and that a sex toy had been used on her. She said the suspect was a white male. Petitioner is from Egypt. He is middle eastern. (2RT 379-382, 397-395, 405-496, 413-415, 419-420, 425-434.)

17. On April 7, 2016, a search warrant was executed at petitioner's residence. In a black bag in petitioner's bedroom, police found 12 sex toys. Doe was shown photographs of the sex toys. She identified the one supposedly used on her. (2RT 261-263, 382-397, 397-398, 409-410, 415-425, 433, 436-437.)

18. After execution of the search warrant, Detective Rafiq spoke with petitioner. (2RT 382-383, 398-401.) Petitioner said that he finds people at the homeless shelter to come back and work on his property. (2CT 382-383.) Petitioner admitted that the dildoes found in his bedroom were his. Petitioner said he washed them with bleach. (2RT 401-402; 2CT 381.) Doe's DNA was not found on the sex toys. (2RT 403.)

### ii. Propensity evidence.

### (1) Kristen Hendricks.

19. Kristen Hendricks testified that on February 15, 2003, she and her husband Richard were homeless. On that dater, she and Richard were waiting at a mission to get food when petitioner offered them work at his residence. They agreed and got into petitioner's vehicle. Petitioner's young son was with him. Petitioner drove them to his house. (1RT 193-198, 207-211.)

20. Petitioner and Kristen went into the house. Richard waited outside. Kristen was instructed to watch petitioner's son while petitioner went outside to instruct Richard on needed yardwork. Petitioner came back into the house. (1RT 198-199, 211-214.)

21. Petitioner started to massage Kristen's shoulders. He touched her butt. He did not stop when she asked him to. Kristen picked up petitioner's son, thinking he would leave her alone. (1RT 199-200, 214-215, 219-220, 226.)

22. Petitioner went out the back door. When Kristen followed, petitioner came back in, pushed her, and said that she and the child were not allowed to be outside. Kristen went to the front door; it was locked. Petitioner grabbed Kristen's arm, pushed her into the laundry room and pushed his groin up against her. Petitioner was "grinding. Almost like he's trying to have sex..." He pushed her shoulders down and said he "needed to feel the bone." Petitioner told Kristen she "was like the other girls." He told her to take her clothes off. Petitioner would not let her leave. (1RT 200-202, 215-218, 221-224.)

23. When the child walked into the room, petitioner stopped and told Kristen she "shouldn't tell anyone because it's private between us." Kristen went outside and told Richard, "he tried to rape me." They called the police. (1RT 202-204, 224-226, 227.)

24. On May 5, 2003, petitioner pled guilty to false imprisonment because of his conduct involving Hendricks. (1RT 204.)

### (2) Alicia Allred.

25. Alicia Allred testified that on November 11, 2013, she was homeless. As she and her boyfriend were walking toward a Motel 6 to get a room, petitioner drove up in his truck and offered her boyfriend some work at his house. They agreed to go with him, put their belongings in the back of petitioner's truck and got in. Alicia sat in the middle. (2RT 349-354, 361-364.)

26. On the ride to petitioner's house, petitioner touched and rubbed Alicia's leg. She was uncomfortable, but did not say anything. (2RT 354-355, 364-365.)

27. At petitioner's house, the three went into the backyard. Petitioner explained the work he needed. As petitioner explained, he was "uncomfortably close" to Alicia. Alicia soon said, "I want to go," that they would consider doing the work, and they needed to check into the motel. (2RT 354-356, 365-369.)

28. On the ride back to the motel, Alicia again sat in the middle. The "entire time"

petitioner was "rubbing his fingers up and down [her] arm and [her] leg." Petitioner requested their phone number in case they were interested in the work. When Alicia leaned into the truck to write down her number, petitioner tried to stick his hand up her sleeve and grope her chest and breast area. Alicia "pulled away pretty quick." Alicia called the police. (2RT 356-358, 369-372.)

29. Alicia identified petitioner as the perpetrator. She also recognized his house from an aerial photograph. She told the officer the license plate of petitioner's truck. Alicia did not want to press charges. (2RT 358-359, 361, 372-373, 453.)

### b. Petitioner's case.

30. Awatif Alobaidi is from Iraq and has lived in the United States for five years. She and her family moved in with petitioner on April 18, 2014. Lawrence Gunsalles was living there. Alobaidi's family lived there for six months and moved out. (2RT 455-458, 476, 482.)

31. Alobaidi helps take care of Gunsalles, who was disabled. (2RT 458-460.) Her English is not good. She testified, "I cannot go out by myself." (2RT 465-467.)

32. During the time Alobaidi has lived with petitioner, he never brought anyone over to help clean the house. (2RT 465, 481.)

33. Petitioner has had painful back problems. He has trouble getting in and out of bed. He takes medication and sees a doctor three times a week. (2RT 467-470.) Petitioner has never been physically violent with Alobaidi. (2RT 469.)

34. Alobaidi put the sex toys in a box and put it under the bed so no one would see them. She and petitioner never used them together. (2RT 470, 484-484.)

35. Petitioner has never discussed with Alobaidi the charges against him. She "know[s] nothing" and does not "understand one thing." (2RT 471, 484-486.)

36. Alobaidi testified that petitioner "is a very good person" and would never bring a woman home and forcibly use a sex toy on her. Petitioner "is a very respectable gentleman." She would not lie. (2RT 471-472, 484, 486.) Petitioner never mentioned the prior 2003 and 2013 incidents to her. (2RT 486-487.)

### 3. Claims for relief.

37. Introduction of prior bad acts to prove propensity violated petitioner's Fourteenth Amendment right to due process.

### 4. Prayer for relief.

Wherefore, Petitioner prays that this court issue a writ of habeas corpus.

Dated: Oakland, California, Thursday, April 28, 2022.

s/ Robert J. Beles
Robert J. Beles
Attorney for Petitioner.

### VERIFICATION

Petitioner is in custody and incarcerated outside of Alameda County. I therefore verify the petition on his behalf. I declare under penalty of perjury that the facts set forth in this petition are true and correct based on my review of the record and the attached Exhibits A and B are true and correct copies of the corresponding United States Supreme Court orders. Executed in Oakland, California, on Thursday, April 28, 2022.

s/ Robert J. Beles
Robert J. Beles
Attorney for Petitioner.

United States District Court
Eastern District of California
--- Courthouse

| | |
|---|---|
| ABDEL ALIEM EL BADRY,<br><br>   *Petitioner*,<br> vs.<br><br>GENA JONES, Warden, California Health Care Facility, Stockton, California,<br><br>   *Respondent*.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>   *Real Party in Interest*. | No. 2:22-at-430<br><br>MEMORANDUM OF POINTS AND AUTHORITIES |

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Introduction.

 Relief by way of a petition of writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or law or treaties of the United States. 28 U.S.C. section 2254(a); 28 U.S.C. section 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.

 The challenged convictions arise out of the Sacramento County Superior Court, which is located within the Eastern District of California. Section 2254(a); 28 U.S.C. section 2241(d).

### 2. As there were no permissible non-propensity inferences that the jury could have drawn from the prior bad acts, introduction of such evidence violated petitioner's Fourteenth Amendment due process rights.

### a. Introduction and general law.

 Improperly introduced evidence of a defendant's bad character or prior bad acts can violate a defendant's Fourteenth Amendment due process rights if there are "no permissible inferences" the jury could draw from the challenged evidence, making the evidence relevant only to show propensity to commit a crime. *Boyde v. Brown*, 404 F.3d 1159, 1162 (9th Cir. 2005), *Jammal v. Van de Kamp*, 926 F.2d 918 (9th Cir. 1991), *McKinney v. Rees*, 993 F.2d 1378,

1384-388 (9th Cir. 1993) and if the evidence rendered the defendant's trial fundamentally unfair, see *Estelle v. McGuire*, 502 U.S. 62, 75 (1991), *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), and *McKinney v. Rees*, id.

*McKinney v. Rees* is a pre-AEDPA case but was reaffirmed in *Kipp v. Davis*, 971 F.3d 939, 956 (9th Cir. 2019), also citing *Garceau v. Woodford*, 275 F.3d 769, 775 (9th Cir. 2001) (*rev'd on other grounds*, 538 U.S. 202 (2003).)

In *McKinney v. Rees*, the defendant had been charged with killing his mother with a knife. No knife was identified as the murder weapon, and the medical examiner testified that the cuts "could have been made by almost any kind of knife." *McKinney v. Rees*, 993 F.2d at 1381. However, the trial court admitted evidence that McKinney owned two dagger type knives and was "proud of his 'knife collection,'" *McKinney v. Rees*, 993 F.2d at 1382.

*McKinney* found a due process violation because there were no inferences a jury could have drawn from this "knife" evidence other than propensity commit a crime. *Kipp v. Davis* summarized *McKinney* as follows:

> "In *McKinney*, we held that the admission of evidence of the petitioner's fascination with and use of knives to convict him for the stabbing of his mother violated his due process right to a fair trial. 993 F.2d at 1386. We reached this conclusion after determining that the other acts evidence was largely irrelevant because they only proved that the petitioner owned knives at various points in time, but not on the night of the murder in question. *Id.* at 1382-83. Hence, the evidence was relevant only as character evidence — to show propensity to act as someone who was fascinated with knives and led a 'commando lifestyle.' *Id.* at 1385; *see also Alcala v. Woodford*, 334 F.3d 862, 886-88 (9th Cir. 2003) (holding there was a due process violation where defendant was charged with murder and the prosecution admitted into evidence that police had seized from defendant's home two unused sets of kitchen knives made by same company that made the murder weapon); *Garceau*, 275 F.3d at 775-76 (holding there was due process violation where defendant was charged with double homicide and the prosecution introduced evidence that he had been convicted of murdering a different person several months after the double homicide, and the trial court's instruction to the jury expressly invited them to draw the inference of criminal propensity)."

*Kipp v. Davis*, 971 F.3d at 956.

*Kipp* contrasted *McKinney* with other cases there were permissible inferences that the jury could draw from the challenged evidence. See in particular *Jeffries v. Blodgett*, 5 F.3d 1180, 1193 (9th Cir. 1993), where admission of guns and bullets possessed by defendant were allowed

because one of the guns could have been the actual murder weapon.

### b. There were no permissible non-propensity inferences that the jury could have drawn from the prior bad acts.

Petitioner was charged with two offenses — section 289(a)(1), penetration by a foreign object (a sex assault), and section 236, false imprisonment (a non-sex offense.) The evidence of prior bad acts were alleged prior incidents involved sex assaults. One of them led to a conviction of section 136 false imprisonment, and one didn't result in a prosecution.

The state courts admitted the evidence of prior bad acts under a state statute, Evidence Code section 1108, specifically to prove propensity to commit a presently charged sex assault. However, mere compliance section 1108 doesn't control petitioner's Fourteenth Amendment due process rights. Under *McKinney v. Rees* and *Kipp v. Davis*, if the jury could make no inferences from the prior bad acts other than propensity, such evidence will violate federal due process if it rendered petitioner's trial fundamentally unfair.

Permissible inferences would include petitioner's alleged motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. *Estelle v. McGuire*, 502 U.S. at 72.

The prior bad act evidence was not sufficiently similar to the charged offense to give rise to any inference other than propensity. Petitioner didn't claim at trial that Doe consented to a sex act or that he thought she had consented. Thus motive, intent, knowledge, absence of mistake or accident were irrelevant to the prosecution's case and were thus not permissible non-propensity inferences the jury could have made. The only issue was whether what Doe claimed happened at all.

Similarly, opportunity was not permissible inferences. Petitioner didn't offer defenses such as an alibi to show a lack of opportunity to commit the offense.

The only remaining inferences were to show identity, that petitioner actually committed the charge offense, which includes showing that petitioner followed a particular preparation or plan in committing the charged offense that was similar to that alleged in the prior offenses.

However, to show identity, federal courts demand a high degree of similarity between the charged crime and alleged prior bad acts. "[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise." *United States v. Luna*, 21 F.3d 874, 878-79 (9th Cir. 1994), quoting *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir.1991).

The only similarity was that all of the alleged incidents involved petitioner allegedly hiring people off the street to work at his residence and assaulting them. This is simply a generic similarity that does not distinguish these acts from numerous other crimes committed by others.

Both prior incidents involved petitioner picking up a couple, man and a woman. The present charges involved only a woman.

In the Allred incident, the sexual touchings allegedly occurred in petitioner's car. The present charges involved an assault at petitioner's house.

In both the alleged prior incidents, the witnesses said petitioner picked them up off the street in his car. but in the present incident, Doe said she drove to petitioner's house on her own.

In the prior incidents, the alleged victims remained clothed and the incidents simply involved brief touching. In the present charge, Doe said petitioner removed her clothes.

The evidence of the prior incidents was not sufficiently similar to the instant case to give rise to a permissible inference of identity – that petitioner actually engaged in the described act, or of any related similar preparation or plan in committing such acts.

Introduction of the prior bad acts here was in some ways less justifiable to prove a relevant fact here than the knife evidence was in *McKinney v. Rees*.

In *McKinney*, there was no dispute that the defendant "owned knives at various points in time." Here, however, the evidence that the prior acts had occurred was disputed.

In *McKinney*, the government claimed that the knife evidence was admissible "to dispute McKinney's claim that he was "knife-free" at the time of the murder." The government argued that the knife evidence "tends to show that he was lying and that he actually owned a Tekna

m-4
Petition for Writ of Habeas Corpus; Verification;
Memorandum of Points and Authorities; Exhibits "A" and "B"

knife on January 28, 1984 [the murder date], but lied about it out of guilt to cover up the fact that he had hidden his knife after using it to kill his mother." *McKinney v. Rees*, 993 F.2d at 1382. The government's theory in *McKinney* was opportunity, to show that McKinney had a knife at the time of the murder. Similarly, in *McKinney*, there was no dispute that McKinney's mother had actually been murdered by someone.

Here, in contrast, petitioner's defense was simply that he hadn't committed the charged acts. That the acts had occurred was disputed. In contrast to *McKinney*, where the evidence showed that the defendant had definitely owned knives before the murder, and thus would have continued to own such knives at the time of the murder, the bad acts evidence here only showed that the witnesses claimed that such acts occurred. The false imprisonment conviction arising out of the Hendrix incident didn't show that any sex assault undisputedly occurred.

### c. Introduction of the prior bad acts evidence was prejudicial and deprived petitioner of a fundamentally fair trial in violation of due process.

In *Kipp*, the Ninth Circuit held that:

> " . . . the lack of permissible inferences alone does not constitute a violation of due process necessitating a new trial We must consider the strength of the prosecution's case against Kipp, the extent to which the other crimes evidence was similar to the crime for which Kipp was on trial, the extent to which the prosecution relied on the other crimes evidence during trial, and whether the other crimes evidence was emotionally charged. See *Garceau*, 275 F.3d at 775; *McKinney*, 993 F.2d at 1384-86."

Here, the prosecution's case against petitioner was much weaker than even in *McKinney*, where the Ninth Circuit found a violation of due process. As pointed out, there was no dispute that McKinney's mother had actually been killed with a knife and that a murder had actually occurred. More critically, McKinney was one of only two suspects who could have likely committed the murder, since it was committed inside a house where only two other people lived besides the victim. *McKinney v. Rees*, 993 F.2d at 1385.

Here, in contrast, the evidence that petitioner had actually assaulted Doe was much weaker. The occurrence of the sex assault was based entirely on Doe's testimony. Moreover, other people lived at petitioner's house. Alobadi testified that she didn't go out of the house on

her own. (2RT 465-467.) Alobadi testified that the other resident, Gunsalles, was disabled and being cared for (2RT 261-263), suggesting that Gunsalles was unlikely to go out on his own as well. That Alobadi and Gunsalles were typically present in the house suggests that they would have been aware of an unusual incident had it occurred. But Alobadi insisted that petitioner had never brought anyone over to help clean the house as far as she knew. (2RT 465, 481.)

Absent the prior bad act evidence, the case against petitioner was based entirely on the uncorroborated testimony of a homeless person off the street. Such a person would have had a strong motive to fabricate a crime in hopes of getting compensation as a crime victim. Given this, it is unlikely that the jury would have convicted petitioner absent the prior bad act evidence.

### 3. Conclusion.

For these reasons, this court should issue a writ of habeas corpus.

Dated: Oakland, California, Thursday, April 28, 2022.

s/ Robert J. Beles
Robert J. Beles
Attorney for Petitioner.